┌─────────────────────────────────┐
│ **UNPUBLISHED ORDER** │
│ Not to be cited per Circuit Rule 53 │
└─────────────────────────────────┘

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted March 29, 2005 [*]
Decided June 20, 2005

**Before**

Hon. RICHARD D. CUDAHY, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 04-2677

| | |
|---|---|
| JI CHENG NI,<br>　　　*Petitioner*, | Petition for Review of an Order of the<br>Board of Immigration Appeals |
| *v.* | No. A77-354-460 |
| ALBERTO R. GONZALES,<br>Attorney General of the United States,<br>　　　*Respondent.* | |

**O R D E R**

Ji Cheng Ni, a native of China's Fujian Province, entered the United States without documentation in 2001.  Upon his arrival at Los Angeles International Airport ("LAX"), an asylum officer determined that he was removable but had a credible fear of persecution or torture if returned to China.  An Immigration Judge subsequently found his testimony of persecution incredible and ordered him removed to China.  Ni appealed to the Board of Immigration Appeals, which summarily affirmed the IJ's decision.  Ni petitions for review of the BIA's order.  We affirm.

---

[*] We granted the petitioner's motion to waive oral argument. Thus, the appeal is submitted on the briefs and the record.  *See* FED. R. APP. P. 34(a), (f).

Ni, who left China at the age of 21, arrived at LAX after snakeheads first arranged his travel through Hong Kong, Indonesia, and Australia. At his credible-fear interview, he gave a sworn statement, through an interpreter, that the Chinese authorities closed his bookstore and that he feared persecution for selling Falun Gong material. During the same interview, however, he also said that he had never been employed. Attempting to verify his story, the asylum officer called a phone number in China that Ni had given as his home number, and an individual identified as Ni's father answered. When asked through an interpreter if Ni "ever owned a store of any kind," Ni's father reportedly replied, "[n]o, my son does not own a store." Confronted with this apparent inconsistency, Ni then stated that he had not owned a bookstore and that he came to the United States to seek employment.

Ni subsequently applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), asserting a fear of persecution based on political opinion and specifically his sale of Falun Gong material. In that application, Ni alleged that he "operated a store" where the police discovered he was selling "Falungon [sic] stuff." He went on to generally state that the police tried to arrest him, but that neither he nor his family had actually been "accused, charged, arrested, detained, interrogated, convicted and sentenced, or imprisoned" in China.

At his removal hearing before the IJ, Ni recounted a different set of facts. He revealed that his sister lived illegally in Maryland, contrary to a sworn statement at the credible-fear interview that none of his relatives resided in the United States. He also testified that the police arrested his parents and held them for ten days while investigating their ties to Falun Gong, even though he explicitly denied in his asylum application that family members had ever been arrested or detained. Finally, he testified that he had lied to the asylum officer at his credible-fear interview when he told the officer that he feared arrest in China for impregnating his girlfriend. Ni added, "I was nervous and I was taught by the snakeheads what to say."

The IJ denied Ni's application for asylum, largely on the basis of an implicit adverse credibility finding. The IJ pointed to Ni's inconsistent accounts of his employment history in China and the alleged arrest and detention of his parents. The IJ also faulted Ni for not providing any corroborating evidence, such as a statement from his father or sister confirming that he sold Falun Gong material. Finally, the IJ noted other inconsistencies in Ni's statements, including the apocryphal pregnancy of a girlfriend and his sister's residency in the United States. The BIA summarily affirmed the IJ's opinion.

When, as it did here, the BIA adopts the decision of the IJ, that decision becomes the final decision of the agency and will be affirmed if it is supported by substantial evidence. *Huang v. Gonzales*, 403 F.3d 945, 948 (7th Cir. 2005).

We will give substantial deference to an IJ's adverse credibility finding that is supported by "specific, cogent reasons" that "bear a legitimate nexus to the finding." *Lin v. Ashcroft*, 385 F.3d 748, 751 (7th Cir. 2004) (citations omitted). Moreover, only "extraordinary circumstances" warrant overturning a credibility finding, and reversal is not justified "simply because an alternate finding could also be supported by substantial evidence." *See Capric v. Ashcroft*, 355 F.3d 1075, 1087 (7th Cir. 2004) (internal quotation marks and citation omitted).

On appeal Ni challenges only the IJ's denial of asylum and thus abandons any arguments for withholding of removal and for relief under the CAT. *See Lin*, 385 F.3d at 750. In a cursory argument, Ni first challenges the IJ's adverse credibility finding, asserting that the IJ overemphasized "minor inconsistencies" that "were sufficiently explained in other parts of the testimony." Ni suggests, for example, that varying understandings of words like "employment," "operated," and "own" could explain his changing account regarding ownership of a bookstore.

The IJ, however, properly supported the adverse credibility finding. In addition to questioning whether Ni actually sold Falun Gong material, the IJ expressed skepticism regarding Ni's job history in China and highlighted Ni's inconsistent statements regarding the alleged arrest and detention of his parents and the reason he came to the United States. Although translation difficulties can account for some inconsistencies in an alien's testimony, *see Iao v. Gonzales*, 400 F.3d 530, 532 (7th Cir. 2005), Ni does not explain the numerous inconsistencies (beyond whether he sold Falun Gong materials) among the accounts given in his statement, application, and testimony. Indeed, "lying in a sworn statement is not irrelevant to credibility." *See Balogun v. Ashcroft,* 374 F.3d 492, 504 (7th Cir. 2004) (upholding IJ's adverse credibility finding when alien changed story after initial sworn statement; changes related to basis for asylum and original misstatements "were calculated attempts to mislead the immigration officials"). The IJ's adverse credibility finding—far from relying on minor inconsistencies—is supported by specific and cogent reasons.

Ni's second argument is that the IJ erred by basing the adverse credibility finding on a lack of corroborating evidence. It is true that "the testimony of the alien alone may be sufficient to sustain the burden of proof without corroboration." *Capric*, 355 F.3d at 1085-86 (internal quotation marks and citation omitted). But Ni mistakenly presumes that a lack of corroboration compelled the IJ's adverse credibility finding. To the contrary, the IJ explained that Ni's "story here before the Court is negated by [inconsistences in] a sworn statement" and "his own application for asylum."

Finally, Ni raises the frivolous argument that the IJ improperly credited the statement of the individual alleged to be his father without confirming the man's identity. Ni has not suggested to date that the individual in question was not his father, but even if the IJ erred in crediting the alleged father's statement (and it is

not clear from his order that he did), the notable inconsistences upon which the IJ relied in discrediting Ni justify the denial of his asylum application.

The decision of the BIA is AFFIRMED.  The petition for review is DENIED.